# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

DOUGLASS BRIDGEFORD, #330-749   *

Plaintiff   *

v.   *   Civil Action No. PJM-16-2454

MS. ODIFIE, Pharmacy Tech,   *
Nurse CHRISTINA BIRD,
  *
Defendants
  ***

## MEMORANDUM OPINION

Douglass Bridgeford ("Bridgeford") is an inmate currently incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland. Pending is Bridgeford's Complaint, filed pursuant to 42 U.S.C. §1983 and supplemented, alleging he was denied prescription medications by Defendants Naa Odifie, R.Ph. ("Odifie") and Christina Bird, L.P.N. ("Bird") during the time he was confined at the Maryland Correctional Institution-Hagerstown ("MCIH"). ECF 1, 4, 8, 10, 12. Bird filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF 35) to which Bridgeford filed an Opposition Response (ECF 38) and Bird filed a Reply. ECF No. 40. Odifie filed a Motion to Dismiss for Failure to State a Claim (ECF 46) and Bridgeford filed an Opposition Response. ECF No. 50.

The issues are briefed and the Court now rules without an evidentiary hearing, having deemed it unnecessary. Local Rule 105.6 (D. Md. 2016). For the reasons stated below, Bird's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, (ECF 35), construed as a Motion for Summary Judgment, IS GRANTED. Odifie's Motion to Dismiss (ECF 46) also IS GRANTED.

## BACKGROUND

Bridgeford, who is self-represented, initiated this lawsuit on June 29, 2016, alleging he has been denied pain medication which amounts to "cruel and unusual punishment." ECF No. 1. All of the originally named Defendants in the Complaint, except Odifie, have since been dismissed at his request. On July 15, 2016, Bridgeford amended the Complaint to add Bird as a Defendant.[1]

## STANDARD OF REVIEW

### I. Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). The sufficiency of a complaint is assessed by reference to the pleading requirements of Rule 8(a)(2), which provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544,

---

[1] Bridgeford's filings can be erratic and difficult to discern. Nevertheless, the Court is mindful that Bridgeford is a pro se litigant and accords his pleadings generous construction. *See e.g. Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (self-represented pleadings must be held to "less stringent standards than those by lawyers.") For example, on August 8, 2016, Bridgeford moved to dismiss all medical defendants, which the Court granted. ECF No. 8, 9. On August 10, 2016, he filed correspondence indicating that he has asked for Bird's dismissal in error and had intended to pursue his claims against her. ECF 10. On August 31, 2016, the Court treated the correspondence as a Motion to Amend the Complaint, granted the Motion and reinstated Bird as a defendant. ECF 11. On October 26, 2016, Bridgeford filed correspondence requesting that all previous litigation filed by him be dismissed, and then Bridgeford clarified direction that he intended Bird to remain as a defendant. ECF 34.

570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In reviewing a Rule 12(b)(6) motion, a court " 'must accept as true all of the factual allegations contained in the complaint' " and must " 'draw all reasonable inferences [from those facts] in favor of the plaintiff.' " *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Semenova v. Maryland Transit Admin.,* 845 F.3d 564, 567 (4th Cir. 2017). While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not accorded such deference. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## II. Summary Judgment

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material

facts. *See Celotex v. Catrett*, 477 U.S. 317 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

If this initial burden is met, the opposing party may not rest on the mere allegations in the complaint. *Id*. at 247–48. The opposing party "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, summary judgment is appropriate. *Anderson*, 477 U.S. at 248–49.

The argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id.* "If the evidence is merely colorable or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50 (citations omitted). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt [the moving party's] version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

On a motion for summary judgment, the Court considers the facts in the light most favorable to Bridgeford as the non-moving party, drawing all justifiable inferences in his favor. *Ricci v. DeStefano*, 557 U.S. 557, 585–86 (2009).

## DISCUSSION

Bridgeford's allegations raise an Eighth Amendment claim of constitutionally inadequate medical care. In order to demonstrate an Eighth Amendment violation, a prisoner must prove two elements: "(1) that objectively the deprivation of a basic human need was sufficiently

serious, and (2) that subjectively the prison officials acted with a sufficiently culpable state of mind." *See Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective element is satisfied by a serious medical condition, and the subjective element is satisfied by showing deliberate indifference. *Id*. "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Id. (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner was suffering from a serious medical need and that, subjectively, prison staff was aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *Id*. at 837 (1994).

The medical treatment provided must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). A defendant must know of and disregard an excessive risk to inmate health or safety. "[T]he [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Disagreements between an inmate and a medical provider over the course of an inmate's proper medical care is not enough to state a claim of deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson*, 145 F.3d at 166. The Court shall consider Bridgeford's allegations in the context of this legal framework.

## I. Claims Against Nurse Bird

Bridgeford alleges generally that Bird stole his medication and altered his medical records. ECF 4 at pp. 2-3; ECF 4-1. Specifically, he claims: 1) on July 5, 2016, Bird "rewrote" a medical order for delivery of a 76-pill blister-pack of Gabapentin (Neurontin)[2] and did not deliver the medication to him (ECF 10 at p. 3); 2) on July 8, 2016, Bird took 46 of his Gabapentin pills (ECF 4); and 3) Bird took 90 tablets of "some" 600 mg. medication in the month of June in an unspecified year. ECF 4. As relief, Bridgeford seeks monetary damages of $3,500. ECF 10, at p. 1.

In response, Bird has filed her affidavit and 72 pages of Bridgeford's verified medical records. ECF 35-4, ECF 35-5. In her affidavit, Bird attests she did not administer Neurontin to Bridgeford in July 2016, because at that time he did not have an active prescription for that medication. Bird indicates she does not have authority to prescribe medication. Bird Decl. ECF 35-5 ¶3. Regarding the allegation that in June of an unspecified year, she wrongfully took 90 tabs of 600mg. of "some" medication, she states that the only 600 mg medication prescribed in June of 2016 was a tapering dose of Gabapentin active only from June 8 to June 16, 2016. *Id*. ¶4; *see also* Medical Records, ECF 35-4 at p. 10. Bird attests no prescription for 90 pills of Gabapentin was written for Bridgeford in June of 2016. ECF 35-5 ¶4. She notes that had Bridgeford been given a Gabapentin prescription for 90 tabs on July 5, 2016, there would be no medical need for another Gabapentin prescription for 46 tabs to issue on July 8, 2016. *Id.* Bird attests "she never wrongfully diverted or withheld Bridgeford's Neurontin or any other medication prescribed for him for her own or anyone else's benefit." *Id.* ¶6.

---

[2] The record refers to the medication interchangeably by both its generic and brand names, as shall the Court.

On April 26, 2016, Jonathan Thompson, M.D.[3] submitted a request to renew Bridgeford's non-formulary prescription for Neurontin for knee pain. ECF 35-4 at 1-2, 3. On April 27, 2016, Dr. Odifie, a pharmacist, denied the medication order because Bridgeford's prior use of Synvisc and intraarticular steroid injection were indications that he had osteoarthritis, and anticonvulsants like Gabapentin, are not indicated for management of degenerative joint disease. *Id.* Odifie recommended tapering and discontinuing the Gabapentin over seven days. *Id.*[4] The prescription was discontinued on April 27, 2016. *Id.* at p. 52.

On May 2, 2016, Bridgeford presented complaints of pain to Rosalie Thurber, R.N. He asked for Neurontin, and dismissed the possibility of knee surgery because it "won't help." *Id.* at p. 3. Bridgeford stated his knee injection was performed on the wrong side and his Tramadol[5] was not working. Thurber's notes indicate that although Bridgeford asserted he was in terrible pain, he did not appear so and, at the end of the meeting, he walked so briskly from the medical room that the correctional officer had to catch-up to him. *Id.* On the same day, Bridgeford met with Siobhan Noonan, R.N. asking to have his medications "fixed." *Id.* at p. 4. Noonan explained the order for nonformulary Gabapentin was declined. Bridgeford had active prescriptions for Tramadol 50mg and aspirin EC 81 mg. *Id.*

On May 18, 2016, Bridgeford met with Noonan, expressing his need for Neurontin for nerve pain. She referred him to a medical provider for his medication requests and complaints of continuing knee problems. Noonan noted Bridgeford was ambulatory with no apparent signs of

---

[3] Bridgeford named Dr. Thompson was a defendant in the Complaint as initially filed. ECF 1. The Court later granted Bridgeford's request to dismiss Thompson from the case. ECF 8, 9.

[4] Gabapentin is an anticonvulsant that affects chemicals and nerves in the body that are involved in causing seizures and some types of pain. Synvisc is a synthetic fluid replacement for the natural fluid that lubricates the joints used to provide relief from osteoarthritis symptoms. *See* ECF No. 35-3 nn. 1, 2.

[5] Tramadol (brand name Ultram) is used to relieve moderate to severe pain. It belongs to the group of medicines called opioid analgesics. *See* https://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/?report=details; *see also* ECF No. 35-3 n. 3.

distress. *Id*. at p. 5.

On May 20, 2016, Nurse Thurber and Bridgeford met again. Thurber advised that another non-formulary pain medication request for Gabapentin had been submitted and declined. Thurber referred Bridgeford to a medical provider for his medication and knee problems. *Id*. at p. 6.

On June 8, 2016, Dr. Thompson examined Bridgeford during a chronic care visit. Thompson informed Bridgeford that his tele-med conference with Dr. Krishaswamy, an orthopedist, had been cancelled by Dr. Krishnaswamy who had to be elsewhere, but the teleconference would be rescheduled. The record indicates Bridgeford wanted to discuss reinstating the Neurontin prescription. Thompson wrote a prescription for a seven-day tapering dose of Gabapentin. *Id.* at p. 10. Thompson also renewed Bridgeford's prescription for Tramadol, which he had been using since August 8, 2011, for chronic neuropathic pain. Odifie recommended against continuing the Tramadol because opioid medications are not intended for long-term use for chronic pain due to their propensity to cause tolerance to therapeutic effects and physical dependence. *Id*. at p. 11. Odifie recommended tapering Bridgeford off Tramadol and introducing Cymbalta[6] once his Gabapentin was discontinued.

On June 10, 2016, Noonan met with Bridgeford who complained about discontinuing Gabapentin and Tramadol. Noonan explained the Gabapentin tapering process and told Bridgeford that the non-formulary request for Tramadol was denied. Noonan referred Bridgeford to a medical provider. *Id*. at p. 12.

On June 15, 2016, Bridgeford met with Wanda Lumpkins, P.A., for his complaints of knee pain and asked for Cymbalta for pain. *Id.* Lumpkins indicated she would discuss the request

---

[6] Cymbalta is a selective serotonin and norepinephrine reuptake inhibitor antidepressant (SSNRI). It is prescribed for various conditions including chronic muscle or joint pain. ECF 35-3 n. 5.

8

with the Regional Medical Director ("RMD"). *Id*. at p. 13.

On June 17, 2016, Bridgeford complained to Nurse Noonan that he had not received Cymbalta. Noonan noted Bridgeford's electronic health record (EPHR) showed no active order for Cymbalta. *Id.* at p. 15.

On June 22, 2015, Bridgeford presented a list of complaints to Nurse Thurber, which included obtaining a prescription for Cymbalta. Lumpkins submitted a non-formulary drug request for Cymbalta (60 mg) for 120 days which was approved on June 27, 2016. *Id.* at p. 20.

On July 5, 2015, Dr. Krishnaswamy held a teleconference with Bridgeford and recommended arthroscopic surgery for his right knee. *Id*. at pp. 22-25. The surgery was performed on July 28, 2016, at Bon Secours Hospital. Bridgeford was sent to the Jessup Regional Institution after surgery, where he was prescribed a three-day course of Percocet for pain relief. *Id*. at pp. 29-31.

After Bridgeford returned to MCIH, he was seen on July 29, 2016, by Maryanne Reimer, N.P., for post-operative evaluation. Bridgeford reported that he stopped taking Cymbalta because it upset his stomach. Reimer discontinued the prescription. She also noted Bridgeford had a marked ambulatory deficit even with using a cane. *Id.* at p. 32.

On August 2, 2016, Bridgeford requested a renewal of his Gabapentin prescription. *Id.* at p. 35. Kira Froude, R.N. noted his gait was within normal limits and he walked without apparent difficulty. *Id.* [7]

On August 11, 2016, Bridgeford had an altercation with an unidentified nurse in the dispensary, poured water on himself, and was taken to segregation housing. He stated he had not taken his medication. *Id.* at p. 37.

On August 16, 2016, Bridgeford told Nurse Froude that he was in severe pain and wanted

---

[7] On August 10, 2016, Bridgeford filed the Amendment to the Complaint adding Bird as a defendant. ECF 10. Curiously, none of the medical records show any interaction between Bird and Bridgeford. ECF 16-4.

9

knee surgery follow-up to remove his stitches. He requested Gabapentin and Tramadol for pain management. Froude observed that Bridgeford's surgical wounds had healed, his range of motion was within normal limits, he was using a cane, and he walked without apparent distress. *Id.* at p. 41. On August 22, 2016, Nurse Practitioner Reimer prescribed acetaminophen (Tylenol) with codeine for his knee pain, which he reported was effective. *Id.* at p. 44, 46.

On September 7, 2016, Bridgeford complained of left knee pain. He wanted to return his cane and requested smaller knee braces. Reimer prescribed Gabapentin (400 mg) and extended his acetaminophen with codeine prescription to October 7, 2016. *Id.* at p. 48.

Bridgeford was transferred from MCIH to Roxbury Correctional Institution ("RCI") on September 9, 2016. *Id.* at p. 50. Defendant Bird did not provide nursing care to inmates at RCI in September of 2016. ECF 35-5 ¶ 6.

Bridgeford's Opposition Response (ECF No. 37, 38)[8] is largely unresponsive to Bird's dispositive motion and is unsupported by declarations under oath or verified exhibits. Bridgeford avers that Bird "violated her commitment to treat me after operation which she did not. . ." and asserts generally that Bird violated his rights under the Americans with Disabilities Act, asserts medical personnel participate in a "theft ring steal" involving inmate medication, he is still not being treated for pain, and the Department of Public Safety and Correctional Services (DPSCS) continues to transfer him to new correctional facilities. Bridgeford's allegations concerning wound care are unclear, and are raised for the first time in his Opposition Response, as are his baldly asserted ADA claims and his claim against the DPSCS. Bridgeford may not amend the Complaint to add new claims in pleadings opposing a motion to dismiss, as "it is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss." *Myland Labs., Inc. v Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991) (citing *Car*

---
[8] Bridgeford assigns his Opposition Response (ECF 38), as well as many other pleadings, lengthy, self-styled titles.

*Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)). The Court will confine consideration to allegations in the Complaint.

Bird directly refutes Bridgeford's allegations in affidavit, attesting that she never wrongfully diverted or withheld Bridgeford's Neurontin or any other medication prescribed for him for her own or any other person's benefit. Bird Decl. ECF No 35-5. The uncontroverted medical record demonstrates that Bridgeford did not have an active prescription for Neurontin on July 5 or July 8, 2016 and was not prescribed 90 pills of Gabapentin in June or "some medicine." Absent an active prescription, Bird lacked authority to administer the medication to Bridgeford. Apart from Bridgeford's own assertions, he has submitted no evidence that Bird acted with deliberate indifference to his pain. Bridgeford's medical records demonstrate that Bridgeford's medical concerns were monitored regularly, he was provided different medications, treatment modalities (braces, cane), and arthroscopic surgery to address his knee condition and associated complaints of pain. Thus, even when the facts are viewed in the light most favorable to Bridgeford, there is no genuine issue of material fact whether Bird acted with deliberate indifference to his serious medical needs. Accordingly, Bird is entitled to summary judgment in her favor as a matter of law.

**II.     Claims against Dr. Odifie**

Bridgeford alleges Odifie stopped all his pain medications ordered by Dr. Thompson. ECF No. 1. As relief, he asks for $5,000 damages and to enjoin Odifie from "sabotaging" Dr. Thompson's medical orders. *Id.* at p. 3; ECF 10 at p. 1.

Odifie asserts she is entitled to dismissal because Bridgeford states no cause of action against her. ECF 46-1. Bridgeford was neither Odifie's patient, nor was he under her care. And, as a clinical pharmacist, Odifie can only make recommendations concerning mediations,

she does not dispense medication. Rather, she assists prescribers by making recommendations for appropriate therapy. *Id*. at p. 3. To the extent Bridgeford's threadbare allegations can be construed to raise an Eighth Amendment claim of constitutionally inadequate medical care, he provides no evidence that Odifie's recommendations were made with deliberate indifference to his serious medical needs.[9] To the extent Bridgeford's allegations suggest his disagreement with the medications prescribed and provided to him, such disagreement does not support a claim of constitutional abridgement. Accordingly, the Court will grant Odifie's Motion to Dismiss.

## CONCLUSION

For these reasons, the Court will GRANT Bird's Motion for Summary Judgment (ECF 35) and Odifie's Motion to Dismiss (ECF 46). A separate Order follows this Memorandum Opinion.

June 29, 2017

_____/s/_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

---

[9] To the contrary, Odifie's recommendations contained in the records submitted by Nurse Bird, reflect attention to potential harmful drug interactions, given Bridgeford's various medical conditions in addition to his knee pain. Odifie's recommended alternative medicines instead. *See supra* pp. 6, 8.